PETITION OF CHARLTON BROTHERS TRANSPORTATION COMPANY, INC., JOHN B. GONTRUM v. EASTERN MUTUAL CASUALTY COMPANY

CHARLTON BROTHERS TRANSPORTATION COMPANY, INC. v. HAZELTON A. JOYCE, Receiver

[Nos. 74 and 75, October Term, 1942.]

254

*Decided December 7, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, FORSYTHE, MARBURY, and GRASON, JJ.

*Harry O. Levin,* with whom was *C. Morton Goldstein* on the brief, for the appellant.

*Edgar Allan Poe* and *Ralph Robinson,* with whom was *Seymour O'Brien* on the brief, for the appellees.

*William C. Walsh, Attorney General,* and *D. Heyward Hamilton, Jr., Assistant Attorney General,* for the Insurance Commissioner of Maryland and his deputy.

FORSYTHE, J., delivered the opinion of the Court.

The appellant, Charlton Brothers Transportation Company, Inc., entered two appeals from decrees of the Circuit Court of Baltimore City. The first is from a decree, sustaining without leave to amend, a demurrer to a petition filed by the appellant in a receivership proceeding then pending of the Insurance Commissioner of Maryland v. The Eastern Mutual Casualty Company, a body corporate. The second appeal is from a decree sustaining without leave to amend a demurrer to an original bill, in the nature of a bill of review, filed by the appellant against the Insurance Commissioner, and the Receiver. Both the petition, and the bill, are identical, and present the same question. In each, the court was asked to review, and to rescind, its previous order passed in obedience to a mandate of this court in the recent case of *Joyce, Receiver v. Abrams, et al.,* reported in 178 Md. 535, 16 A. 2d 296.

The first question presented in both of the appeals is, whether the assessment by the court against policy holders of the Eastern Mutual Casualty Company, Inc., is valid.

That question definitely has been decided by the decision of this court in *Joyce v. Abrams, supra,* and in view of the very clear and definite expression in that opinion, written by Judge Johnson, it is not necessary to further discuss the question of the validity of assessments.

The appellant contends in these cases that the Eastern Mutual Casualty Company is not, in contemplation of law, a mutual company; and that that question was not determined by the decision in *Joyce v. Abrams, supra.* Since that point was not then passed upon it now is the particular question presented by these appeals.

The appellant was the holder of a policy of the Eastern Mutual Casualty Company. The company was incorporated under the laws of Maryland in 1934, Article 48A, of the Annotated Code (1924) of the Public General Laws.

The particular provision of that law is as follows: "Corporations may be formed under the provisions of Article 23 of the Code of Public General Laws for insurance purposes * * * either as mutual or stock companies, or as mutual and stock companies combined, as shall be determined and declared in the certificate of incorporation of any such company." Section 13. That provision, since the Act of 1939, providing for mutual and stock companies is no longer in force.

The charter, or articles of incorporation, of the Eastern Mutual Casualty Company (Exhibit No. 5 with the bill), expressly provides in Article 6 that: "The corporation shall be organized as a mutual and stock company combined, pursuant to the provisions of Article 48A of the Annotated Code of Public General Laws of Maryland."

The capital stock consists of 1,000 shares of the value of $100 per share, and "the holders of said stock shall be entitled to receive, when and as declared by the board of directors, out of the surplus remaining after providing for all reserves and the liabilities, quarterly dividends at the rate of, but not exceeding six dollars per annum, payable quarterly."

By the provisions of Article 3 of the charter, the incorporators declared that the purpose of the corporation was, "to conduct a general mutual insurance business &c." Also under the sixth article it is provided that, "each holder of a policy of insurance issued by the corporation shall be a member of the corporation while such policy is in force and no longer, and every such member shall be entitled to one vote, or to such number of votes based upon the insurance in force, the number of policies held or the amount of premium paid, as may be provided in the by-laws of the corporation."

Also, in Article 6 it is provided that in the event of liquidation of the corporation each stockholder shall receive $100 per share, and any surplus "shall be divided *pro rata* among the holders of policies of insurance issued by the corporation and outstanding at the date of the

commencement of liquidaton, the proportion of each such policy holder to be calculated to the amount of premium earned and paid on each outstanding policy to date of liquidation."

Under Article 9 of the by-laws, under the heading "Voting Rights and Management," it is provided that policies are issued by the company "to insured and accepted by insured with the full knowledge by the latter of the fact that the company is a combined stock and mutual company &c."

In view of the various express statements contained in the charter, and by-laws, and policies, to the effect that the company was to be both a mutual and stock company, there seems to be no reasonable doubt but that it was the definite intention of the incorporators to create a mutual as well as a stock company. The law in force at that time clearly provided for a joint mutual and stock company, as well as two other kinds of companies, mutual or stock. The incorporators had a choice of three kinds of companies. They expressly elected to be incorporated as a mutual and stock company combined. Under those circumstances the provisions of the laws governing both stock and mutual companies, are applicable alike to both kinds of companies, is so far as they are not, in some respects, inconsistent.

Looking to the characteristics of a mutual company we find that this court said in *Mutual Fire Ins. Co. v. Jean,* 96 Md. 252, at page 256, 53 A. 950, at page 952, "In a Mutual company the members are entitled to a *pro rata* distribution of the net profits at the end of each year or quarter according to the rule of distribution."

In *Condon v. Mutual Reserve Association,* 89 Md. 99, at page 114, 42 A. 944, at page 947, we said: "A policy holder in a mutual insurance association stands in a twofold relation towards the company. He is a policy holder and he is a member." In 29 *American Jurisprudence, Insurance,* Sec. 52, p. 86, it is stated: "A mutual insurance company may be defined as a co-operative enterprise

wherein the members constitute both insurer and insured, where the members all contribute by a system of premiums or assessments, to the creation of a fund from which all losses and liabilities are paid, and wherein the profits are divided among themselves in proportion to their interests."

The above statements of features of mutual companies seems to us to be an exact description of the Eastern Mutual Casualty Company. Its charter expressly provided that each policy holder was a member of the company during the term of his policy, and as such entitled to a proportionate share in its profits, and liable to assessment, to the extent of his policy premiums, for its liabilities. The fact that stock in the company was issued in no way destroyed its true character as a mutual company. All of the necessary elements of a mutual company were present, and the combination with a stock company was fully authorized by law.

This corporation is clearly what its name, its charter and by-laws says it is. This it not a case where the company simply is called a mutual company, without any of the characteristics of a mutual company. Its purpose is clearly and expressly stated in its charter which contains all of the principles of a mutual company, both in its organization and in its method of operation.

The fact that the policy holders did not have absolute control over the management of the company did not destroy its existence as a mutual company. The policy holders had a vote in proportion to their policy holdings, and regardless of whether that gave them a greater, or less, control over the stockholders, is not sufficient to change the expressed character of the company, and constitute it strictly a stock company. As a matter of fact, both policy holders, and stockholders, had a proportionate part in the management of the company. Each had votes based upon respective holdings, whether policies or stock.

In 29 *American Jurisprudence*, Sec. 52, page 86, it is stated: "The fact that the right to vote and control the

management of insurance companies is vested in those members only who are guarantors does not prevent the company from being regarded as a mutual one." *Corey v. Sherman,* Iowa, 60 N. W. 232, 32 *L. R. A.* 490.

Under the charter and by-laws of the Eastern Mutual Casualty Company, and under the statute in force at the time of its incorporation, we have no hesitancy in holding that Eastern Mutual Casualty Company is a combined mutual and stock corporation, and therefore subject to all of the liabilities on stock, and policy holders, incident to combined stock and mutual companies.

We, of course, do not express any opinion as to the liability of the appellant upon his particular policy, or policies.

> *Decree in No. 74 affirmed; decree in No. 75 affirmed; appellant, Charlton Brothers Transportation Company, to pay the costs in both cases.*